UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TRUSTEES OF THE SHEET METAL, LOCAL 36 WELFARE FUND, et al Plaintiffs, vs. CENTRAL AIR HEATING & AIR, CONDITIONING, INC. AND MID-STATE CENTRAL HEATING & AIR CONDITIONING CO., INC. Defendants. | Case No. 4:10CV293MLM |

## MEMORANDUM OPINION

This matter is before the court on Plaintiffs' Motion for Default Judgment. [Doc. 53] In this Motion plaintiffs move the court pursuant to Rule 55(b) of the Federal Rules of Civil Procedure for an order entering default judgment in favor of plaintiffs and against defendant Central Air Heating & Air Conditioning, Inc. ("Central Air") and defendant Mid-State Central Heating & Air Conditioning Co., Inc. ("Mid-State"), for payment of contributions, interest, liquidated damages, attorneys' fees and costs. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Doc. 18]

Plaintiffs brought this action against Central Air and Mid-State pursuant to Section 502 and 515 of the Employee Retirement Income Security Act ("ERISA") of 1974, as amended, 29 U.S.C. §§ 1132 and 1145 and Section 301 of the Labor Management Relations Act ("LMRA"), as amended, 29 U.S.C. § 185, to enforce the

payment obligations and terms and conditions of the Collective Bargaining Agreement (the "Labor Agreement") between the St. Louis Chapter, Sheet Metal and Air Conditioning Contractors National Association ("SMACNA") and Local 36. Specifically, plaintiffs seek the payment of unpaid employee benefit contributions from Central Air and its alter ego, Mid-State.

By Order dated April 8, 2011 this court granted defendants' Motions to Withdraw their Answers to plaintiffs' Second Amended Complaint and the Motions of their Attorneys to Withdraw as Counsel. [Doc. 51] Without Answers, defendants admit the well-pleaded factual allegations of the plaintiffs' Second Amended Complaint and the court accepts as true all of the facts alleged in the plaintiffs' Complaint. See Fed.R.Civ.P. 8(d) ("averments in a pleading to which a responsive pleading is required are admitted when not denied. . . ."). It is the court's understanding that defendants do not want to further contest plaintiffs' claims and want to proceed with the payment of their obligations.

The court incorporates by reference as if fully set out herein, the Memorandum in Support of Plaintiffs' Motion for Default Judgement. [Doc. 54] This Memorandum accurately states the law and the uncontested facts and it would serve no useful purpose to repeat it here. There is no dispute that the Trustees of the plaintiff Funds are authorized to bring this action. There is no dispute that Central Air is liable for unpaid contributions for April and May, 2009 and October, 2009 through February, 2010. Central States, Southeast & Southwest Areas Pension Fund v. Independent Fruit & Produce Co., 919 F.2d 1343 (8th Cir. 1991); Berry v. Garza, 919 F.2d 87 (8th

Cir. 1991). The particular issue crucial to the entry of the requested default judgment is whether Central Air and Mid-State are alter egos and so are jointly liable for all amounts owed by Central Air and for all contributions for work performed by Mid-State beginning in March, 2010.

If two purportedly separate businesses are alter egos, then a plaintiff may seek to collect the obligations of the first entity from the second. See, e.g. Kellett v. Wofford Brothers Services, Inc., 2010 U.S. Distr. LEXIS 66442 (E. D. Mo. July 2, 2010); Greater St. Louis Construction Laborers Welfare Fund v. Mertens Plumbing and Mechanical, Inc., 552 F. Supp. 2d 952 (E.D. Mo. 2007). Further, as alter egos, both entities are bound to the labor agreement signed by the first. In general, only a party to a collective bargaining agreement is bound by its terms. However, under the alter ego doctrine, "an employer which has not signed a labor contract may be so closely tied to a signatory employer as to bind them both to the agreement." Crest Tankers, Inc. v. National Maritime Union of America, 796 F.2d 234, 237 (8th Cir. 1986); Iowa Exp. Dist., Inc. v. NLRB, 739 F.2d 1305 (8th Cir. 1984); see also Trustees of the Sheet Metal Local 36 Pension Funds v. Advanced Midwest Heating and Cooling, 2009 U.S. Dist. LEXIS 15784 (E.D.Mo. March 2, 2009) (by failing to answer complaint, defendant has admitted that it is an alter ego established to avoid obligations of labor agreement and is bound by the agreement). The Eighth Circuit applies Missouri state law to alter ego claims in ERISA cases. Greater Kansas City Laborers Pension Fund v. Superior General Contractors, Inc., 104 F.3d 1050, 1055 (8th Cir. 1997).

In <u>Mobius Management Systems, Inc. v. West Physician Search, LLC</u>, 175 S.W.3d 186, 188-189 (Mo. Ct. App. 2005), the court set forth Missouri law applicable to piercing the corporate veil to enable a plaintiff to collect a judgment. The court in <u>Mobius</u> held:

> In order to "pierce the corporate veil" the plaintiffs must first show *control* - - not mere majority or stock control, but complete domination, not only of finances, but of policy and business practice with respect to the transaction, such that the corporate entity had no separate mind, will or existence of its own [<u>66, Inc. v. Crestwood Commons Redevelopment Corp.</u>, 998 S.W.2nd 32, 40 (Mo. 1999) (en banc)]. In other words the plaintiff must show that the corporation is the *alter ego* of the defendant. <u>Id.</u> at 41. When a corporation is so dominated by a person as to be a mere instrument of that person, and indistinct from the person controlling it, the court will disregard the corporate form if its retention would result in injustice. <u>Saidawi v. Giovanni's Little Place, Inc.</u>, 987 S.W.2d 501, 504-05 (Mo. Ap. E.D. 1999).
>
> Second, the plaintiff must show a breach of duty - - that this control was used by the corporation to commit fraud or wrong, *to perpetrate the violation of* a statutory or other *positive legal duty*, or to commit a dishonest and unjust act in contravention of the plaintiff's legal rights. <u>66, Inc.</u>, 998 S.W.2d at 40. It is not necessary, however, to show actual fraud. <u>Id.</u> at 41. In some situation, the corporate veil may be pierced when a corporation is undercapitalized, or when its *assets are stripped to avoid creditors,* <u>Id.</u>; <u>Sunbelt Envtl. Services, Inc. v. Rieder's Jiffy Mkt., Inc.</u>, 138 S.W.3d 130, 135 (Mo. App. S.D. 2004).
>
> . . .
>
> Finally, the plaintiff must show that the control and breach of duty *proximately caused* the injury or unjust *loss.* <u>Id.</u> at 40.

<u>Mobius</u>, 175 S.W.3d at 88-89 (emphasis added).

The Missouri Supreme Court in <u>66, Inc.</u>, 998 S.W.2d at 40 found that the three elements required to pierce the corporate veil were present: control, breach of the duty, and proximate cause. <u>See</u> <u>Mobius</u>, 175 S.W.3d at 189. In particular, the court

in 66, Inc., 998 S.W.2d at 40, found that the pierced corporation was used to avoid the defendant's debts; that the plaintiff was unable to collect on a judgment against the defendant; that the defendant used its control over the pierced corporation to avoid satisfying its obligations to the plaintiff; that the defendant's conduct evidenced a wrongful purpose; and that, therefore the corporate veil should be pierced. See Mobius, 175 S.W.3d at 189.

Control for purposes of the alter ego test, is control over the alter ego's finances, policy and business practices. Mobius, 174 S.W.3d at 188. The court looks to several factors in making this determination, including: the ownership and creation of both companies, the management of the corporations, the physical location of the corporate offices, and the transfer of assets, contracts, and employees between the corporation. Mertens Plumbing, 552 F. Supp. 2d at 956.

To show that a corporation used control to commit a fraud or wrong, the court looks to whether the new corporation was created to avoid a legal duty or obligation. Actual fraud need not exist. In addition, a plaintiff can show alter ego status when a corporation's assets are stripped to avoid creditors. Wofford Brother Services, Inc., 2010 U.S.Dist. LEXIS 66442, at *9 (citing Mobius, 174 S.W.3d at 188). Based on the facts as set out in plaintiffs' Statement of Facts, the Memorandum in Support, Doc. 54 at p. 2-5, all of which are fully supported in the record,[1] the court finds that Central Air, through Stephen Schmidt and Jon Huskey control Mid-State. Further,

---

[1] Plaintiffs cite to the Second Amended Complaint and to Stephen Schmidt's deposition for every fact alleged.

the two companies are independent in form only. Schmidt and Huskey were central to the creation of Mid-State. They met with Agers to form it. The purpose was to get out from under Central Air's debt to the Funds and to salvage Central Air's business. Schmidt and Huskey manage Mid-State's daily operations just as they did with Central Air. They are responsible for obtaining jobs and assuring they are completed on time. Mr. Agers has provided little money to run the business, and has almost no role in its day-to-day operations. The physical location of the shop is the same. Mid-State uses Central Air's vehicles with Central Air's name still on them, and Central Air's answering service. It also uses Central Air's tools and equipment. Mid-State hired two of Central Air's sheet metal employees. It performs the same heating and cooling work for many of the same customers, and took up business with two contractors that Central Air was working with and that were still building homes when Central Air closed. <u>Carpenters District Counsel of Greater St. Louis & Vicinity v. F.G. Lancia Custom Woodworking, LLC</u>, 209 U.S.Dist. LEXIS 90202 (E.D. Mo. September 29, 2009)(plaintiff has shown control where second company operates from same address, uses same accountant, employs some of former employees and has performed work for same customers).

The evidence also shows subterfuge. Schmidt and Huskey opened Mid-State to avoid the Labor Agreement. Central Air could not pay its debts and in particular its contribution obligation to the Funds. Schmidt and Huskey first sought an outside buyer but could not find one willing to get involved with a union company. Accordingly, they orchestrated a deal with their acquaintance, Charles Agers, to

continue business non-union. In the space of two or three weeks, Agers and Central Air's attorney created Mid-State; Schmidt and Huskey shut down Central Air without paying its debt to the Fund; and, Mid-State started operations at Central Air's shop with Central Air's tools, vehicles, employees, answering service and customers while claiming to no longer be union. Agers did not start a separate business. He "salvaged" the old business and turned operations over to Schmidt and Huskey to run it with no change.

Alternatively, the evidence shows that Central Air attempted to strip itself of assets to avoid paying contributions. Central Air sold its tools and equipment to Mid-State but never received full, if any, value for these items. Schmidt and Huskey agreed to the asset deal in exchange for continuing to work. Mid-State also pays Central Air's mortgage. It does not pay rent to Central Air for the shop. This does not show an arm-lengths transaction. Central Air is not receiving value for these assets. Rather, through Schmidt and Huskey, it is continuing business through Mid-State to avoid paying the Funds. See Wofford Brothers Services, Inc., *supra* (by receiving tools from first company, using fictitious name, and by operating at the same address, using the same bank and performing work for some of the same customers using the same employees, new company has demonstrated that it is an alter ego); F.G. Lancia Custom Woodworking, LLC, *supra* (timing of creation of new company and continuation of old company's business shows that defendant opened new business to avoid paying creditors).

Finally, the evidence shows that Central Air's control of Mid-State and breach of duty has caused injury to the Funds. Central Air has not paid the Funds and claims it cannot pay the Funds. Further, Central Air through Mid-State is not paying contributions to the Funds for work performed by Mid-State.

Accordingly, the Second Amended Complaint and the evidence show that Central Air and Mid-State are alter egos. Mid-State is therefore liable for all amounts that Central Airs owes the Funds. In addition, as an alter ego, Mid-State is bound by the Labor Agreement, and is required to pay contributions to the Funds at the rates set forth in the Labor Agreement. Central Air and Mid-State are liable for all contributions due from the time Mid-State started operations.

Under the Labor Agreements and ERISA, the Funds are entitled to: (1) interest; (2) liquidated damages in an amount equal to the greater of interest or the liquidated damages provided for in the Labor Agreement; (3) attorneys' fees and (4) costs. 29 U.S.C. § 1132.

Based on the forgoing, the court finds that default judgment should be entered in favor of plaintiffs and against defendants Central Air and Mid-State pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure in the amount of $107,651.65 in unpaid contributions to the local Funds; $36,428.67 in interest and liquidated damages; and $15,497.60 in attorneys' fees and $1,138.40 in costs incurred by the local Funds.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Default Judgment is **GRANTED.** [Doc. 53]

**IT IS FURTHER ORDERED** that a Default Judgment shall be entered this date in favor of plaintiffs and against Central Air and Mid-State.

/s/Mary Ann L. Medler  
**MARY ANN L. MEDLER**  
**UNITED STATES MAGISTRATE JUDGE**

**Dated this   19th   day of  May, 2011.**